UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMUEL LOMAX, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:17CV826 JCH |
| ) | |
| JAY CASSADY, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Samuel Lomax's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The motion is fully briefed and ready for disposition.

On August 3, 2011, a jury in the Circuit Court of St. Louis City, Missouri, found Petitioner guilty of one count of robbery in the first degree, one count of armed criminal action, two counts of robbery in the second degree, one count of attempted robbery in the second degree, one count of tampering in the first degree, one count of assault in the third degree, one count of resisting arrest, and one count of unlawful use of drug paraphernalia. On September 16, 2011, Petitioner was sentenced as a prior and persistent offender to consecutive life sentences on the robbery in the first degree and armed criminal action convictions, concurrent sentences of fifteen, seven, and four years on the remaining felonies, and concurrent sentences of ten months in a medium security institution on the misdemeanors. The Missouri Court of Appeals affirmed the convictions and sentence. *State v. Lomax*, 387 S.W.3d 420 (Mo. App. 2012). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied without an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. *Lomax v.*

*State*, 507 S.W.3d 619 (Mo. App. 2016).

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following four claims for relief:

(1) That the trial court erred in denying Petitioner's motion for judgment of acquittal, as the State's evidence was insufficient to prove that Petitioner committed the crime of tampering;

(2) That the trial court erred in denying Petitioner's motion for judgment of acquittal, as the State's evidence was insufficient to prove that Petitioner committed the crime of robbery in the second degree for the alleged offense involving Ms. Mandjiak;

(3) That the trial court erred in denying Petitioner's *pro se* motion to disqualify the public defender's office on the grounds of conflict of interest; and

(4) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to advise Petitioner regarding the plea process.

The Court will address the claims in turn.

## **DISCUSSION**

**I.** **Ground 1**

As stated above, in Ground 1 of his petition Petitioner asserts the trial court erred in denying Petitioner's motion for judgment of acquittal, as the State's evidence was insufficient to prove that Petitioner committed the crime of tampering. Petitioner raised this claim on direct appeal of his convictions. The Missouri Court of Appeals first outlined the facts established through evidence at trial as follows:

> Jeffrey Schneider (Schneider) worked for a church organization in the City of St. Louis. The church organization owned a white 1995 Chevrolet half-ton pickup truck with the license plate number 1WG-534. On April 3, 2010, Schneider drove the truck to the church organization's office, parked it in the parking lot next to the main building, and went inside the building. The key used to start the truck was in Schneider's possession, and he did not leave it in the vehicle. When Schneider returned to the parking lot two to three hours later, the truck was gone and broken glass was on the ground where the truck had been parked. Schneider reported the

theft to the police and provided the police with a description of the truck and its license plate number.

Several hours later, at approximately 5:15 p.m., David Scott (Scott) was walking along Oakland Avenue when he saw a struggle between a man and another person at a bus stop. Scott believed the man was an African American in his 40s, but Scott could see only the feet of the other person because the shelter at the bus stop obscured his view. Scott watched as the man and the other person pushed and pulled an object. A short while later, Scott saw the man run from the bus stop carrying a woman's purse. The man got into a white truck with the license plate number 1WG-534 and drove away. Scott noted the license plate number then went to the bus stop. There, he found an elderly woman who seemed distraught and confused; she had bruises on her face and scrapes on her arms and legs. The woman told Scott that the man he had seen running from the bus stop had stolen her purse. Scott called the police to report the incident.

When a police officer arrived at the bus stop, Scott and the elderly woman, Dorothy Mandjiak (Mandjiak), described the incident. The officer immediately broadcast the description of Mandjiak's assailant and of the truck. Mandjiak told the officer that the man had punched her in the face, and her face was swollen. As the officer took Mandjiak's report of the incident, the officer heard a radio broadcast regarding another robbery involving a man matching the description of Mandjiak's assailant and the white truck and license plate number the assailant had driven away. The second robbery occurred approximately seven blocks from where Mandjiak was attacked.

At approximately 5:25 p.m., Durie Shiebler (Shiebler) was trying to fuel a U-Haul truck at a gas station a few blocks from where Mandjiak had been attacked. Shiebler saw Defendant[1] walking toward the truck. Defendant was wearing a yellow plaid jacket and dark pants and carrying a tire iron. Defendant reached into the truck where Shiebler was sitting, grabbed a wallet hanging from a cord or chain around Shiebler's neck, and "ripped it off really hard." Defendant then opened the door of the truck and tried to forcibly pull Shiebler out of the truck. Schiebler [sic] fought back by kicking Defendant in the chest and then screaming. Defendant reached inside the truck and snatched Shiebler's purse, which was on the front seat. Shiebler's friend ran out of the gas station and scared Defendant off. Shiebler saw Defendant get into a white pickup truck and noted part of the license plate number, 1WG. Shiebler reported the robbery to police and described the truck. Shiebler also described Defendant as a tall, medium build, middle-aged, medium-skinned, African-American male. Shiebler later identified Defendant in a photo lineup. Shiebler also identified Defendant's jacket and the tire iron.

A short time later, at approximately 6:15 p.m., Ann Brockland (Brockland) was securing her two-year old son in a car seat in the back of her parked car near Lafayette Square. Brockland noticed a white Chevrolet pickup truck stop in the

---

[1] Petitioner is referred to as "Defendant" by the Missouri Court of Appeals.

middle of the street after it passed her car.  Brockland saw Defendant carrying a crowbar walk in front of her car.  Brockland faced Defendant and asked what he wanted.  Defendant raised the crowbar and told Brockland to "shut the f*** up or I'm going to f****** kill you."  Defendant opened the passenger door of Brockland's car and took her purse, which had been on the front seat.  Defendant told Brockland that if the purse did not have any money in it, he would kill her.  As Defendant began to rummage through the purse, he was startled and walked toward the truck.  Brockland started screaming, and Defendant got into the truck on the driver's side and drove away.  Brockland saw that Defendant was the only person in the truck.  Brockland reported the incident to police and provided a description of Defendant, his clothing, and the white pickup truck.  Brockland later identified Defendant in a live lineup.  She also recognized some of her property that was subsequently found inside the white truck.

Later that night, just after 10 p.m., Courtney Tiemann (Tiemann) parked her car on a side street near an apartment building on Washington Avenue.  After exiting her car, Tiemann heard a loud noise and saw Defendant jump out of a white pickup truck.  As Defendant lunged toward Tiemann, she turned and faced him, but he grabbed at her necklace and knocked her to the ground.  Defendant also grabbed Tiemann's left arm, leaving a bruise.  When Tiemann screamed, Defendant ran back to the truck, hopped in, and took off.  Tiemann reported the incident to police and provided a description of Defendant, his clothing, and the white truck.  A witness to the incident involving Tiemann and Defendant provided the license plate number of the truck.  Tiemann subsequently identified Defendant in a live lineup.

After the incident involving Tiemann and Defendant, police placed a "wanted" notice on the white pickup truck.  One of the officers then left the police station at the end of his shift.  As the officer was driving home, the officer observed a pickup truck matching the description of the white Chevrolet pickup truck on which he had placed the "wanted" notice.  The officer followed the truck and found it parked 15 to 20 blocks away from the location of the incident involving Tiemann and Defendant.  The officer confirmed the license plate number as the same number provided by the witness to the incident involving Tiemann and Defendant, then he notified an officer still on duty that he had located the "wanted" vehicle.  The truck then drove away.

The second officer, who was still on duty, drove his police cruiser toward the location the truck had last been seen.  The officer saw the truck, followed it, and activated his police cruiser's lights and sirens.  The truck pulled to the curb but sped away as the officer walked toward it.  The officer pursued the truck, which reached speeds of up to 70 miles per hour.  The truck ran a red light and collided with another vehicle.  Both the truck and the other vehicle sustained significant damage in the collision.  However, when officers approached the truck, they found Defendant sitting in the driver's seat with his foot on the gas pedal, revving the engine.  The officers ordered Defendant to exit the truck, but Defendant refused.  The officers forcibly removed Defendant, advised Defendant that he was under arrest for first-degree tampering, and informed Defendant of his *Miranda* rights.  Defendant, using

profanity, told the officers, "I know all that s***. You can't chase stolen cars, you're in more trouble than I am."

When officers conducted a search of Defendant incident to the arrest, they found a glass smoking tube typically used for smoking crack. Subsequent testing revealed that the pipe contained traces of cocaine base. The officers then searched the truck and found that the steering column had been cracked and that a screwdriver had been used instead of a key in the ignition. The officers also found inside the truck a tire iron and clothing matching the description of the clothing worn by the suspect involved in the robberies or attempted robberies of Mandjiak, Shiebler, Brockland, and Tiemann.

(Resp. Exh. E, PP. 2-6). The Missouri Court of Appeals then considered and rejected Petitioner's first claim for relief, as follows:

In his first point, Defendant claims the trial court erred in overruling his motions for judgment of acquittal and in entering judgment on the jury's finding of guilty on Count VI, first-degree tampering, because the evidence was insufficient to establish beyond a reasonable doubt that Defendant did not have permission to possess or operate the truck. Defendant argues that the owner of the truck did not testify and that the State did not present any evidence showing that Defendant did not have the owner's permission….

In reviewing a challenge to the sufficiency of the evidence to support the jury's verdict, this Court must look to the elements of the crime, consider each in turn, and consider whether a reasonable juror could have found the defendant guilty of each of the elements beyond a reasonable doubt. State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001); State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993). We view the evidence and all favorable inferences drawn therefrom in the light most favorable to the verdict and disregard inferences to the contrary. Whalen, 49 S.W.3d at 184; Grim, 854 S.W.2d at 411. This Court will not supply missing evidence or draw unreasonable, speculative, or forced inferences. Whalen, 49 S.W.3d at 184. "[The] [t]estimony of a single witness, if deemed credible by the jury, may be considered sufficient for conviction, though that testimony is uncertain or inconsistent." State v. Uptegrove, 330 S.W.3d 586, 590 (Mo. App. W.D. 2011), quoting State v. Case, 140 S.W.3d 80, 91 (Mo. App. W.D. 2004).

With regard to Defendant's first point, the State was required to present evidence at trial establishing that Defendant committed first-degree tampering in violation of Section 569.080.1(2). Section 569.080 provides, in pertinent part:

1. A person commits the crime of tampering in the first degree if: …

(2) He or she knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

"To establish this offense, the State must prove the defendant knew he was operating the car without the consent of the owner." State v. Presberry, 128 S.W.3d 80, 96 (Mo. App. E.D. 2003) (quotation omitted). Direct proof of the required mental state may not be available, so intent may be inferred from circumstantial evidence. Presberry, 128 S.W.3d at 96. "Even in a circumstantial evidence case, the evidence need not be conclusive of guilt, nor must the evidence exclude every hypothesis of innocence." Id., citing State v. Martin, 882 S.W.2d 768, 770 (Mo. App. E.D.l994). "Proof of a defendant's knowledge he is operating a motor vehicle without the owner's consent may take several forms." Presberry, 128 S.W.3d at 96. When a defendant is stopped while operating a stolen vehicle, evidence such as the presence of a broken steering column in the vehicle or the presence of a tool used to bypass the ignition key is strong evidence to support the inference that the defendant knowingly operated the vehicle without the owner's consent. Id. "Additionally, the knowledge element for first degree tampering may be established through evidence that links the defendant who is stopped while operating a stolen vehicle to the theft of that vehicle." Id.

Here, the State presented sufficient evidence establishing that Defendant had committed first-degree tampering.

First, at the time of his arrest, Defendant admitted that he was driving a stolen car. One of the police officers who had forcibly removed Defendant from the driver's seat of the truck after the collision with another vehicle testified that, after advising Defendant of his *Miranda* rights, including the right to remain silent, Defendant told the officer, "I know all that s\*\*\*. You can't chase stolen cars, you're in more trouble than I am." The officer also testified that he observed the steering column had been cracked and that a screwdriver had been used instead of a key in the ignition, which was a known method of operating a vehicle without using a key to start it.

Second, we disagree with Defendant's assertion that no "officer or agent" of the record owner of the truck, the church organization, testified at trial and that no evidence supported the State's claim that Schneider was an agent of the church organization. "The proof of a lack of consent under Section 569.080 is not limited to the testimony of the title owner, but may be provided by the testimony of the person who had the exclusive use and possession of the vehicle at the time of the alleged tampering." State v. White, 947 S.W.2d 101, 103 (Mo. App. W.D. 1997). Schneider, who was the employee of the church organization that owned the white 1995 Chevrolet half-ton pickup truck with the license plate number 1WG-534, testified that he drove the truck in connection with his employment. Schneider testified that only he had permission to operate the truck on behalf of employer, that he did not know Defendant, and that he had not given Defendant permission to operate the truck. Schneider testified that on the day the truck was stolen, he had driven it to the church organization's office, parked it in the parking lot next to the main building, and went inside the building. Schneider testified that the key used to start the truck was in his possession and that he did not leave it in the vehicle.

> Schneider further testified that when he returned to the parking lot two to three hours later, the truck was gone and broken glass was on the ground where the truck had been parked. Schneider reported the theft to the police and provided the police with a description of the truck and its license plate number. Schneider's testimony regarding his employment relationship with the church organization and the fact that his employer had given only Schneider permission to operate the truck on behalf of employer was sufficient to establish that neither he nor the church organization gave Defendant permission to operate the truck. See White, 947 S.W.2d at 103.
>
> Accordingly, from this evidence, a reasonable juror could have inferred that Defendant operated the truck without the consent of the church organization. Defendant's first point is denied.

(Resp. Exh. E, PP. 7-10).

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has held that in reviewing whether the evidence presented in state court was sufficient to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original) (citation omitted). Here, the jury heard testimony from New Life Evangelistic Center employee Jeffrey Schneider that he was the only person authorized to drive the vehicle at issue. (Resp. Exh. A, PP. 197-98). Mr. Schneider also

testified that he did not know Petitioner, and that he did not give Petitioner permission to take the vehicle from the New Life Center. (*Id.*, P. 203-04). The jury further heard testimony from Officer Andrew Griffin that after he stopped Petitioner in the vehicle and informed him of his rights, Petitioner said, "You can't chase *stolen* cars, you're in more trouble than I am." (*Id.*, PP. 317-319 (emphasis added)). Taken together, this evidence was sufficient to permit a reasonable jury to find that Petitioner knowingly possessed and/or operated the vehicle at issue without the consent of the owner thereof. The decision of the Missouri court thus is entitled to deference, and Ground 1 is denied.

## II.  Ground 2

As stated above, in Ground 2 of his petition Petitioner asserts the trial court erred in denying Petitioner's motion for judgment of acquittal, as the State's evidence was insufficient to prove that Petitioner committed the crime of robbery in the second degree for the alleged offense involving Ms. Mandjiak. Petitioner raised this claim on direct appeal of his convictions, and the Missouri Court of Appeals denied the claim as follows:

> In his second point, Defendant claims the trial court erred in overruling his motions for judgment of acquittal and in entering judgment on the jury's finding of guilty on Count III, second-degree robbery, because the evidence was insufficient to establish beyond a reasonable doubt that Defendant was the person who robbed Mandjiak. Defendant argues that Mandjiak did not testify and that neither Mandjiak nor Scott could identify Defendant as the assailant….
>
> With regard to Defendant's second point, the State was required to present evidence at trial establishing that Defendant committed second-degree robbery, in violation of Section 569.030. Section 569.030.1 provides:
>
>> A person commits the crime of robbery in the second degree when he forcibly steals property.
>
> "When considering the evidence, circumstantial evidence is afforded the same weight as direct evidence." State v. Brooks, 158 S.W.3d 841, 850 (Mo. App. E.D. 2005).

Here, the State presented sufficient evidence establishing that Defendant had committed second-degree robbery.

First, the police officer who responded to the scene of the incident involving Mandjiak testified that the witness to the incident, Scott, provided a general description of Mandjiak's assailant and specific description of the truck and the license plate 1WG-534 on the truck. The police officer further testified that, while he took Mandjiak's report of the incident, he heard a radio broadcast regarding another robbery involving a man matching the description of Mandjiak's assailant and matching the description of the truck and license plate of the assailant's truck. Shiebler, who was the victim of the robbery following the incident involving Mandjiak, testified that a tall, medium build, middle-aged, medium-skinned, African-American man wearing a yellow plaid jacket and dark pants, carrying a tire iron, and driving a white pickup truck with a partial license plate number of 1WG robbed her at a gas station. Shiebler testified that the man robbed her only a few minutes after and a few blocks from the robbery of Mandjiak. Shiebler later identified Defendant as the man who robbed her.

Second, Defendant was identified as the robber and attempted robber in two additional robberies later that same night. Brockland, who was the victim of the robbery following the robbery of Shiebler, testified that an African-American man wearing a plaid jacket and a hat, carrying a crowbar, and driving a white Chevrolet pickup truck robbed her in front of her house. Brockland subsequently identified Defendant in a live lineup. Tiemann, who was the victim of the robbery following the robbery of Brockland, testified that an African-American man wearing a plaid long-sleeved shirt and a hat and driving a white pickup truck attempted to rob her as she exited her car. Tiemann later identified Defendant in a live lineup. A witness to the attempted robbery of Tiemann testified that she saw the license plate number on the truck, lWG-534, and reported it to police.

Third, the police officer who arrested Defendant after the high-speed chase testified that Defendant was the driver of a white truck with the same license plate number as the truck described as being used in a series of robberies that night. The officer also found a tire iron, a hat, and a plaid jacket inside the truck.

All of these witnesses provided independent yet similar descriptions of the robber or attempted robber and of the truck driven by the robber or attempted robber, including the license plate number. Specifically, Shiebler's, Brockland's, and Tiemann's descriptions of the robber or attempted robber matched the general description Scott provided to police during the investigation of the incident involving Mandjiak. Furthermore, Shiebler, Brockland, and Tiemann all positively identified Defendant as the robber or attempted robber. Given this evidence, a reasonable juror could have inferred that Defendant was the person who robbed Mandjiak. Defendant's second point is denied.

(Resp. Exh. E, PP. 7, 10-12).

As stated above, pursuant to Supreme Court law, in reviewing whether the evidence presented in state court was sufficient to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319 (emphasis in original) (citation omitted). Here, the State presented testimony from Officer Mark Johnson, the officer who responded to the Mandjiak robbery, that he received details about the suspect and the white pickup truck from a witness to the robbery, and broadcast them over the air. (Resp. Exh. A, P. 209). The State then presented testimony from victims Durie Shiebler, Ann Brockland, and Courtney Tiemann, that the perpetrator was wearing a yellow plaid jacket and dark colored pants, and driving a white pickup truck. (*Id.*, PP. 215, 221, 241-42, 270, 273). All three women further identified Petitioner as the perpetrator in a lineup. (*Id.*, PP. 225-26, 250-51, 276-77). Finally, the State presented evidence from arresting officers Griffin and Robert Stuart that during a search of the white truck, they discovered a tire iron (alleged to have been used during the robberies), a tan hat and a plaid jacket. (*Id.*, PP. 322-23, 342-43). Taken together, this evidence was sufficient to permit a reasonable jury to find that in addition to Shiebler, Brockland and Tiemann, Petitioner was also the person who robbed Mandjiak. The decision of the Missouri court thus is entitled to deference, and Ground 2 is denied.

### III. Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts the trial court erred in denying Petitioner's *pro se* motion to disqualify the public defender's office on the grounds of conflict of interest. Petitioner raised this claim on direct appeal of his convictions, and the Missouri Court of Appeals denied the claim as follows:

> In his third point on appeal, Defendant claims the trial court erred in denying his *pro se* motion to disqualify the Public Defender's office on the grounds of a conflict of interest because Brockland, who was a witness against Defendant, had

previously interned in the Public Defender's office and was a friend of an attorney in that office, which created an appearance of impropriety requiring disqualification of the local Public Defender's office. We disagree.

The disqualification of counsel lies within the trial court's sound discretion. State ex rel. Horn v. Ray, 325 S.W.3d 500, 504 (Mo. App. E.D. 2010). "In order to evidence a conflict of interest, something must have been done by counsel or something must have been forgone by counsel and lost to the [defendant] that was detrimental to the [defendant's] interests and advantageous to another." Hickey v. State, 328 S.W.3d 225, 228-29 (Mo. App. E.D. 2010). A conflict of interest must be shown by evidence. Hickey, 328 S.W.3d at 228, 231. The mere possibility of a conflict is insufficient to impugn a criminal conviction. Id. at 231. "We presume prejudice only if the [defendant] proves that counsel actively represented conflicting interests and that an actual conflict adversely affected counsel's performance." Id. at 228-29, citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Here, Defendant's claim is without merit. We have reviewed the record and finding nothing to suggest that Defendant's counsel acted or failed to act in any way that was detrimental to Defendant's interests and advantageous to Brockland or any other person. See Hickey, 328 S.W.3d at 229. Before trial began, the trial court addressed Defendant's *pro se* motion to disqualify the Public Defender's office. Defendant's counsel, an attorney in the Public Defender's office, informed the trial court that Brockland had previously known some of the attorneys in the office where Defendant's counsel worked. Defendant's counsel stated that she did not know Brockland, which was the reason Defendant's counsel had been assigned to Defendant's case. The trial court thereafter denied the motion. Given that the record is devoid of any evidence of an actual, relevant conflict of interests in Defendant's counsel's representation of Defendant, the trial court did not abuse its discretion in denying Defendant's *pro se* motion to disqualify the Public Defender's office. Point denied.

(Resp. Exh. E, PP. 12-13).

The Supreme Court discussed the standards to apply in evaluating a claim of attorney conflict of interest in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as follows:

One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S., at 345–350, 100 S.Ct., at 1716–1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability

of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see, e.g.*, Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan, supra*, 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted).

*Strickland*, 466 U.S. at 692.

Upon review, the Court finds that even assuming a conflict of interest existed, Petitioner offers no evidence that said conflict adversely affected his lawyer's performance. Under these circumstances, the Court cannot find that the trial court erred in denying Petitioner's *pro se* motion to disqualify the public defender's office on the grounds of conflict of interest. Ground 3 is denied.

## IV.  Ground 4

As stated above, in Ground 4 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to advise Petitioner regarding the plea process. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

### FINDINGS OF FACT

3.  The parties appeared before the Court on August 1, 2011. At that time Katrina Jones, movant's[2] attorney, announced that movant had authorized her to withdraw his pleas of not guilty and to enter pleas of guilty on all nine counts pursuant to the State's recommendation of twenty-five years. Erin Granger, the prosecuting attorney, said movant had another case, Cause No. 1022-CR01695-01, that the State was willing to run concurrent. The Court said to proceed with Cause No. 1022-CR01696-01 and then consider Cause No. 1022-CR01695-01.

4.  When questioned by the Court, movant stated that he had previously pleaded guilty "from '88 to '96", and said "I had criminal possession, auto theft."

5.  Movant understood the rights he was going to waive by his guilty pleas, and movant said he was not suffering from any health problems that affected what he was

---

2 Petitioner is referred to as "movant" by both the 29.15 post-conviction motion court and the Missouri Court of Appeals.

doing by pleading guilty and was not under the influence of any drugs, alcohol or narcotics.

6. Movant stated that he understood the charges and had spoken with his attorney sufficiently to make a decision whether to plead guilty. Movant said he understood he did not have to plead guilty.

7. Ms. Granger stated that, as to Counts I and II, the State would prove that on April 3, 2010 movant forcibly stole a purse in the possession of Anne Brockland and did so while using a "tire arm."[3] The Court then asked movant if he did what Ms. Granger had recited, to which movant responded, "Did I what?" The Court again asked movant if he did what Ms. Granger said he did, to which movant responded, "I don't really have no comment on that." The Court said, "Okay. Fair enough. Let's go, let's bring the jury in."….

12. After movant was sentenced in both cases he was questioned by the Court regarding the effectiveness of Ms. Jones' representation in Cause No. 1022-CR01696-01. Movant said he had three attorneys prior to Ms. Jones because of the number of people who knew one of the victims. Movant said he wanted the victims deposed but none of his attorneys did so; movant also said he did not have adequate time to go over his case with his attorney prior to the trial and guilty pleas. Movant said he had no witnesses he wanted called at his trial and that "She did all right. She did pretty good." Movant then said he was offered twenty-five years but, during the guilty plea, did not understand what the Court was saying. Movant acknowledged the case had been sent out for trial. Ms. Granger pointed out that movant had previously pleaded guilty "and certainly understands how a guilty plea works."….

## CONCLUSIONS OF LAW

2. The only claim in movant's amended motion is that his attorney was ineffective for failing to advise him on how to plead guilty. Movant claims that, because his attorney did not properly advise him how to plead guilty, the Court rejected his plea and he went to trial and lost.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney and that he was thereby prejudiced. Williams v. State, 168 S.W.3d 433, 439 (Mo. banc 2005); Wilkes v. State, 82 S.W.3d 925, 927 (Mo. banc 2002).

A criminal defendant has no constitutional right to have a plea of guilty accepted, and a trial court may reject a plea in its sound discretion. State v. Banks, 135 S.W.3d 497, 500 (Mo. App. W.D. 2004).

---

3 The transcript reflects Ms. Granger said "tire arm." The Court believes this is an error and that Ms. Granger said "tire iron."

˘- 13 -˘

> Rule 24.02(e) provides that the Court shall not enter judgment upon a guilty plea unless there is a factual basis for the plea. In the absence of a sufficient factual basis, the court should reject a plea. Jones v. State, 758 S.W.2d 153, 154 (Mo. App. E.D. 1988). It is true that it is not necessary for a defendant to actually admit or state facts establishing that the offense occurred. State v. Morton, 971 S.W.2d 335, 340 (Mo. App. E.D. 1998). Here, however, movant's statements indicated that he was not willing to admit the facts constituting the offenses, and his statements further indicated to the Court that he was not taking the guilty plea proceeding seriously and was not accepting responsibility for his actions.
>
> Movant's claim that his attorney should have advised him how to plead guilty is without merit. The guilty plea proceeding did not involve complex issues, and the questions asked of movant did not utilize legal terminology that would not be expected to be understood by a criminal defendant. The issue before the Court was whether movant was willing to knowingly and voluntarily plead guilty to the charges, and this issue was to be based on movant's own responses and not on what counsel advised him to say in order to get a plea accepted.
>
> The Court has reviewed the record in this case and the Court finds that movant has failed to allege facts which entitle him to relief.

(Resp. Exh. F, PP. 51-57). Movant advanced the claim on appeal from the denial of his 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> Prior to jury trial, defense counsel informed the trial court that Movant had decided to plead guilty to all nine counts in exchange for a total sentence of twenty-five years, and the trial court began questioning Movant to ensure that his decision to plead guilty was knowing, intelligent and voluntary. The following exchange took place during the plea hearing:
>
> Court: [Movant], I'm going to ask you some questions. You're under oath, I expect you to answer the questions truthfully; is that fair?
>
> Movant: Yes, sir.
>
> Court: If at any time you need to speak to [defense counsel] stop and let me know and I'm happy to do that; is that fair?
>
> Movant: Yes.
>
> Court: If you need me to restate the question let me know, I'll stop and do that for you; is that fair?
>
> Movant: Yes, sir.

….

| | |
|---|---|
| Court: | Do you understand you've been charged with…[o]ne count of robbery first degree, one count of armed criminal action, two counts of robbery second degree, one count of attempted robbery second degree, one count of tampering first degree, one count of assault third degree, one count of resisting arrest, and once count of unlawful use of drug paraphernalia. Do you understand those are the charges against you today? |
| Movant: | Yes, sir. |
| Court: | Has your lawyer explained each of these charges to you so that you understand them? |
| Movant: | Yes, sir. |
| Court: | Have you spoken with your lawyer enough to make a decision whether or not to plead guilty to any or all of these charges? |
| Movant: | Say it again. |
| Court: | Sure. Have you spoken with your lawyer enough to decide whether you want to plead guilty to any or all of these charges? |
| Movant: | Yeah, we had just spoken about this situation now. |
| Court: | Have you spoken with your lawyer enough to make a decision whether or not to plead guilty to any or all of these charges? |
| Movant: | Yeah, yes, sir. |

….

| | |
|---|---|
| Court: | All right. At this time, [Movant], I'm going to ask the circuit attorney to tell us what she expects the evidence against you would be if there were a trial. Please listen to her because when she's finished I'm going to ask if you did what she says you did; fair enough? |
| Movant: | Yes, sir. |

[Circuit attorney explains what she expects the evidence against Movant would be if there were a trial as to Counts I and II.]

| | |
|---|---|
| Court: | [Movant], did you do what the circuit attorney says you did on the date she says you did it? |
| Movant: | Did I what? |
| Court: | Did you do what the circuit attorney says you did on the date she says you did it? |
| Movant: | I don't really have no comment on that. |
| Court: | Okay. Fair enough. Let's go, let's bring the jury in. No, we're done. I don't understand what she was saying, that's it. Let's bring them in. |
| Movant: | No, I misunderstood. |
| Court: | No, sir, we're done. Let's go. |
| Defense counsel: | Your Honor, I really don't think he understands. |
| Court: | No disrespect to you, this is really simple. Either you did what the circuit attorney says you did, I've got no comment on that. We're not going through this whole plea and have it blow up. Let's go, let's bring the jury in. Have a seat, [Movant].... |

To be clear, Movant is not claiming that his counsel failed to communicate a plea offer or provided bad advice on an existing offer. See Arnold v. State, 2016 WL 1642966, *5 (Mo. App. E.D. 2016) (recognizing "two specific and narrow instances of attorney error in the context of plea bargaining: (1) *failing to communicate* an existing offer to the defendant; and (2) *providing bad advice* about an existing offer" (emphasis in original)). Instead, Movant claims that counsel "never stressed" to him that "he must agree with the judge with every part of the plea" and did not inform him "that if he did not understand parts of the plea, that he must inform her so she could tell the judge about the misunderstanding." Had his counsel advised Movant to "agree with the judge with every part[] of the plea," such advice could have undermined the trial court's important role in ensuring that the plea is entered knowingly, intelligently and voluntarily and could have potentially induced Movant to provide inaccurate responses to the trial court's inquiries. See Cooper v. State, 356 S.W.3d 148, 153 (Mo. banc 2011) ("[A] guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.")

As the motion court indicated, "The issue before the Court was whether [Movant] was willing to knowingly and voluntarily plead guilty to the charges, and this issue was to be based on [Movant's] own responses and not on what counsel

advised him to say in order to get a plea accepted." Because the trial court's questions at issue were straightforward and lacked the legal complexity or terminology that might require further explanation by Movant's counsel, it is hard to imagine the type of reasonable advice that may be required in this situation other than instructing Movant to tell the truth, which counsel could have reasonably expected Movant was doing since he was under oath or affirmation. Without factual allegations indicating that his counsel had reason to believe Movant would not be able to understand the plea process or the questions posed, Movant failed to allege facts warranting relief by indicating that his counsel's performance "fell below an objective standard of reasonableness." See Strickland, 466 U.S. at 688. To the contrary, the record refutes that Movant misunderstood: he admitted to pleading guilty previously, expressed an understanding of his rights when questioned and stated the he understood the charges and had "spoken with [his] lawyer enough to make a decision whether or not to plead guilty to any or all of [the] charges" and understood that he did not have to plead guilty. Moreover, the record indicates that the Movant appropriately answered multiple questions and even sought clarification on a separate question he did not understand.

In addition, as for Movant's claim that his counsel did not inform him "that if he did not understand parts of the plea, that he must inform her so she could tell the judge about the misunderstanding," the trial court clearly directed Movant that if he needed to speak to his counsel at any time to stop and let the court know. The trial court also directed Movant to let the trial court know if Movant needed the trial court to restate a question.

Movant also claimed that it was unreasonable for his counsel to fail to advise him that "if he did not accept the State's pretrial plea offer of a twenty-five year sentence, he could possibly receive a longer sentence following his conviction after a jury trial." However, the record clearly indicates that Movant was prepared to accept the plea offer. Accordingly, it was not the alleged failure to inform Movant about possible sentences that interfered with the entry of the plea but Movant's refusal to admit to the conduct described by the prosecutor to establish a factual basis for the plea that caused the trial court to reject the plea.[4]

(Resp. Exh. I, PP. 4-6, 10-12).

---

4 According to the trial court, the reason the plea was not entered in this case was because of the trial court's determination that Movant was unwilling "to admit the facts constituting the offenses" and that "[Movant] was not taking the guilty plea proceeding seriously and was not accepting responsibility for his actions," not because of any ineffectiveness of his counsel. We cannot overlook the trial court's discretion in this context. There is no absolute right to have a court accept a plea. State v. Creamer, 161 S.W.3d 420, 424 (Mo. App. W.D. 2005). "For this reason, it is well settled that a trial court may exercise its sound discretion to reject a guilty plea." Id. Missouri courts have described such discretion as "virtually unlimited." See State v. Williams, 353 S.W.3d 685, 690 (Mo. App. W.D. 2011) ("The trial court has virtually unlimited discretion prior to acceptance of the plea to refuse any plea of guilty outright or to reject any plea bargain between the State and the defendant.") (quoting Creamer, 161 S.W.3d at 425). "It has frequently been held that the court at a guilty plea proceeding

As noted above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration the Court finds that with this claim, Petitioner fails to establish deficient

---

should reject the plea if the record facts do not establish the commission of a crime." State v. Osborn, 2016 WL 5888947, *4 (Mo. App. W.D. 2016) (internal quotations omitted).

performance on the part of Ms. Jones.  Specifically, the Court notes that during the aborted guilty plea proceeding, Petitioner answered in the affirmative when asked if his lawyer had explained the charges to him, and whether he had spoken with his lawyer enough to make a decision regarding whether or not to plead guilty.  Furthermore, when the judge elected to proceed with trial rather than accept the plea, Ms. Jones protested on Petitioner's behalf, reiterating that he truly did not understand the nature of the proceeding and his role therein.  Under these circumstances, the state court's finding that Petitioner did not receive ineffective assistance of counsel was not unreasonable in light of the evidence presented in state court, and this Court finds trial counsel's actions did not fall outside the wide range of professionally competent assistance sanctioned by *Strickland*.  Ground 4 of Petitioner's § 2254 petition must therefore be denied.[5]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice.  A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this ___28th___ Day of March, 2018.

---

[5] In light of the above ruling, the Court need not consider whether Ms. Jones' allegedly deficient performance caused prejudice to Petitioner.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE